UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| HARRISON MELVIN X. PEARISON, JR.,[1] | ) | |
| | ) | |
| a.k.a. HARRISON M. PEARSON, JR., | ) | |
| | ) | |
| *Petitioner,* | ) | |
| v. | ) | No. 1:05-cv-149 |
| | ) | *Mattice/Lee* |
| HOWARD CARLTON, Warden. | ) | |
| | ) | |
| *Respondent.* | ) | |

## M E M O R A N D U M

Harrison Melvin X. Pearison, Jr., ("Pearison" or "Petitioner") has filed a petition for *writ of habeas corpus* pursuant to 28 U.S.C. § 2254 (Court File No. 4). Petitioner was convicted by a jury of one count of aggravated arson in 1997. The trial court sentenced him to 20 years in the Tennessee Department of Correction. He now seeks review of that conviction.

Respondent has filed a document entitled Answer to Petition for Writ of Habeas Corpus (Court File No. 17). The Answer contains most of the elements required by Rule 5 of the Habeas Corpus Rules: it states whether the Petitioner has exhausted state remedies; identifies what transcripts or other records of state proceedings are in existence; and supplies the transcripts and other portions of the record, including the Petitioner's briefs on appeal and state court opinions. But the Answer goes farther (Court File No. 17).

---

[1] The record reflects a variance in the spelling of Petitioner's surname. Petitioner's name was spelled "Pearson" in the state court trial record, the direct appeal, and on documents pertaining to his inmate trust fund account. However, his state post-conviction record, state post-conviction appeal, and his habeas documents reflect the spelling of his name as "Pearison." The Clerk will be **DIRECTED** to add Petitioner's a.k.a. name of Harrison M. Pearson, Jr., to the Court record.

A large component of the Answer was seemingly designed to function as a motion for summary judgment or motion to dismiss. The Answer was filed by the Respondent's attorney, a Tennessee assistant attorney general, by means of the Court's electronic case filing system. It was designated by the filer as a "Response" on the Court's electronic case filing system docket sheet.

Motions for summary judgment and motions to dismiss have been filed in other Section 2254 cases by the Attorney General after the Respondent was ordered to "file an answer or other pleading." These earlier motions for summary judgment and motions to dismiss, however, were not incorporated into the answer. The Court does not approve of the practice whereby a motion for summary judgment or a motion to dismiss is engrafted onto an answer or other pleading. Nevertheless, as Petitioner has treated the Answer as a motion to dismiss[2], the Court will treat it as such. Petitioner simultaneously filed a motion for an extension of time in which to respond to the Respondent's motion to dismiss (Court File No. 23) and his response (Court File No. 22). The Court will **DENY as MOOT** Petitioner's motion for an extension of time, as Petitioner has filed a response (Court File No. 22).

After reviewing the record and applicable law, the Court concludes the Petitioner's § 2254 petition is without merit, and it will be **DISMISSED**.

---

[2]     As evidenced by his response which he titled Petitioner's Response to the Respondent's Answer and Request for Dismissal (Court File No. 22).

## I.    STANDARD OF REVIEW

Petitioner may obtain habeas relief if he can demonstrate he is in custody pursuant to the judgment of a state court in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254.  Under Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court is to determine, after a review of the response, the transcript, record of state court proceedings, and the expanded record, whether an evidentiary hearing is required.  If a hearing is not required, the district judge is to dispose of the case as justice dictates.  The Court finds it is unnecessary to hold an evidentiary hearing in the instant case.

The decision of the state courts is reviewed by this Court under 28 U.S.C. § 2254(d), which is a part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This statute delimits the scope of a federal district court's jurisdiction to review habeas claims.  In particular, a court considering a habeas claim must defer to any decision by a state court concerning that claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(1) and (2).  Credibility findings made by state courts are entitled to a presumption of correctness. *Smith v. Jago,* 888 F.2d 399, 407 (6th Cir. 1989), *cert. denied,* 495 U.S. 961 (1990).

II.    **PROCEDURAL HISTORY**

Petitioner was originally charged with four counts of attempted first degree murder and one count of aggravated arson.  On November 3, 1997, he was acquitted of the four counts of attempted first degree murder, but convicted of aggravated arson. Petitioner received a twenty year sentence on that conviction.  Petitioner filed a motion for new trial on December 12, 1997 [Addendum No. 1, Vol. 1, at 39].   The trial court denied the motion on February 16, 1998 [Addendum No. 1, Vol. 1, at 40].   On August 31, 1999, the Tennessee Court of Criminal Appeals affirmed defendant's conviction [Addendum No. 2, Vol. 3], and the Tennessee Supreme Court denied his application for permission to appeal on March 13, 2000 [Addendum No. 2, Vol.  5].   Petitioner filed a state post-conviction petition and, after he was appointed counsel, a hearing was held on March 7, 2003.

Although during the hearing the trial court expressed a desire to find a way to grant Petitioner a new trial,[3] the trial court subsequently denied post-conviction relief.  On appeal Petitioner raised three claims.  The post-conviction appellate court affirmed the trial court's denial of post-conviction relief [Addendum No. 4, Vol. 3].   Petitioner's application for permission to appeal was denied by the Tennessee Supreme Court on December 20, 2004 [Addendum No. 4, Vol. 4].   The instant habeas petition was filed in this Court on May 6, 2005 (Court File No. 4).

---

[3]      "Before ruling, the post-conviction court observed that even though the offer [of 11 months and 29 days] had been communicated to the petitioner and petitioner turned it down, 'it just doesn't seem right ... for [the petitioner] to have to serve 20 years when he could have served 11 months and 29 days,' and expressed the desire "to find some way to grant him a new trial."  *Pearison v. State*, 2004 WL 1514844, at *4.

## III. <u>FACTUAL BACKGROUND</u> [4]

On the evening of March 1 and 2, 1996, Petitioner visited with a friend, Mr. Floyd Polk ("Mr. Polk"), on two separate occasions. Petitioner first visited with Mr. Polk at his home at 1117 Belmeade Avenue at approximately 9:30 p.m. They drank whiskey and talked for about an hour. At first Petitioner was distraught about his pending divorce, but after the two talked about the situation, Petitioner's demeanor changed and he began laughing and joking. Petitioner left Mr. Polk's house, but returned between midnight and 12:30 a.m. Mr. Polk testified that on Petitioner's second visit, he observed a gallon jug containing a liquid in his yard and detected a gasoline odor on Petitioner. When he inquired about Petitioner smelling of gasoline, Petitioner explained that he had obtained the gasoline to help Tommy Ramsey's son, whose car had run out of gas. Petitioner left Mr. Polk's home, walking in the direction of 1005 Belmeade Avenue, where the fire occurred.

Petitioner's wife, Paulette Pearson,[5] testified she and Petitioner were in the process of a divorce and Petitioner had permanently moved out of their house at 1005 Belmeade Avenue two weeks prior to the fire. Mrs. Pearson testified that Petitioner, who she described as high, came to the residence on March 1, 1996, at approximately 5:00 p.m. The two had a conversation about whether to repair the house or sell the house and split the proceeds [Addendum No. 1, Vol. 2, at 79]. Petitioner departed, only to return later at approximately 11:30 p.m. Mrs. Pearson testified Petitioner was drunk when he returned

---

[4] Each page of the addenda containing the transcript of the trial testimony is paginated progressively in two ways: in the upper right-hand corner of each page and in bold in the lower right-hand corner of each page. References to the pages in the addenda will be made using those page numbers located in the upper right-hand corner of each page unless otherwise specified.

[5] The spelling of this witnesses' name is taken from the state court trial transcript.

to the residence and she drove him to his mother's house and had to force him out of the vehicle. When Mrs. Pearson arrived back at her residence, Petitioner was on the phone requesting to speak with her. She refused to talk to Petitioner and went to bed at approximately 11:40 p.m. She was awakened at approximately 1:00 a.m. by her daughter, Yolonda Pearson, who was screaming that the house was on fire. Mrs. Pearson, her daughter, and two other occupants (Paula and Denzel Mason) were able to escape from the burning house [Addendum No. 1, Vol. 2, at 77-133].

Yolonda Pearson testified she discovered the fire during the early morning hours of March 2, 1996. She and Mrs. Pearson discovered two separate fires burning, one at the back door and one at the front door. They heard someone knocking on one of the doors and they both testified they thought the Petitioner was the person knocking on the door. As it turned out, however, it was their neighbor, Joseph Turner, who was knocking.

He eventually kicked the front door open so the occupants of the residence could run out of the burning house [Addendum No.1, Vol. III, at 153-155]. Although neither Mrs. Pearson nor her daughter saw Petitioner set the fire, they both believed he set it because the Petitioner had threatened to do so in the past and because their dog, who always stayed close to their house, was found at Petitioner's mother house, which is where Petitioner was residing at the time [Addendum No. 1, Vol. 2, at 77-149].

Sheila Earvin, a friend of Petitioner's, testified she saw him walking toward the Conoco station at approximately 12:15 a.m. with a plastic jug, which appeared to be empty, in his hand. Although Ms. Earvin did not speak with Petitioner at the time, she knew it was him by his distinctive walk; "he has a little limp" and on occasion wears a brace [Addendum No. 1, Vol. 3, at 161-164]. Ms. Earvin recalled that Petitioner was wearing blue jeans and

6

a blue jean shirt or jacket [Addendum No. 1, Vol. 3, at 161]. Ms. Earvin did not know

whether Petitioner burned the house [Addendum No. 1, Vol. 3, at 172].

As summarized by the Tennessee Court of Criminal Appeals on direct appeal, Alec

Connor, an investigator with the Chattanooga Police Department's arson division testified

as follows:

> [Investigator Connor] was called to the scene of the fire on March 2, 1996. Conner noticed a splash pattern and an oily film on the front of the house. He collected samples of fire debris for testing. As he was collecting the samples, he smelled a distinct accelerant odor. Sample three, pink insulation at the base of the wall inside the back of the house, smelled strongly of gasoline. Conner testified that the irregular burn patterns were caused by a liquid accelerant. Paulette Pearson told Conner that the defendant had threatened to burn the house. Conner asked an officer to bring the defendant to the Fire Administration Building to talk to him.

> When the defendant arrived, Conner advised him of his rights. Conner detected a strong odor of alcohol, and the defendant's hands smelled strongly of bleach. Conner terminated the interview because he believed the defendant was intoxicated. The Monday after the fire, Conner talked to several neighbors near the fire. Conner concluded that the defendant was a suspect, and the defendant was arrested on March 7, 1996. On this date, the defendant signed a waiver of rights form. The defendant wrote two statements after waiving his rights, one at Conner's office and one at the county jail. The defendant denied involvement in the fire in both statements.

> Conner identified his report on the fire. An unidentified person in the crowd surrounding the house after the fire told Conner that a black male, who was five feet nine inches tall, weighing 160 pounds, wearing dark clothes, was seen running from the fire. This information was written in the suspect section of Conner's report. The defendant's name was not listed in the suspect section of this report.

State v. Pearson, 1999 WL 692877, at *2 (Tenn. Crim. App. 1999), perm. app. denied

(Tenn. 2000).

The defendant presented Betty Watkins with Century 21 Time Realty. She testified

that a week to ten days prior to March 8th Petitioner had requested a market analysis on

the subject residence. Ms. Watkins drove by the residence initially on the day Petitioner called her and later went back to perform her market analysis. She and Petitioner discussed her market analysis and scheduled a meeting for March 8th. Ms. Watkins arrived for the scheduled appointment and found the house charred [Addendum No. I, Vol. IV, at 301-307].

James Crutcher, Petitioner's nephew, testified he saw Petitioner on March 1st between 11:00 and 11:30 p.m. when Petitioner arrived at his (Petitioner's) mother's house and asked for fifty cents to wash light blue paint off his hands. Mr. Crutcher testified his cousin and others came back to the house at approximately 2:00 a.m. asking for Petitioner. They went upstairs and he heard a lot of bumping noise [Addendum No. I, Vol. IV, at 315-319].

Petitioner testified his wife filed for divorce in January and he agreed to the divorce and signed the papers which provided for the sale of the house and equal division of the proceeds [Addendum No. 1, Vol. IV, at 353-54]. As summarized by the Tennessee Court of Criminal Appeals on direct appeal, Petitioner testified:

> [T]hat he was not involved in setting the fire at 1005 Belmeade Avenue. Although the divorce settlement stated that the house would be sold and the proceeds split evenly, the defendant acquired estimates for remodeling the house because Paulette Pearson wanted to keep the house. On March 1, 1996, the defendant went to Tommy Ramsey's house around 4:30 p.m. where he helped Ramsey paint a box surrounding a flower bed. At some point, the defendant saw a suspicious white male in a maroon truck sitting at the corner of the fence near 1005 Belmeade Avenue. The defendant was concerned that there was drug activity in which his step-sons were involved with the man in the truck. The defendant went to Floyd Polk's house around 9:30 p.m. and left there around 11:00 p.m. At this time, the defendant walked to 1005 Belmeade Avenue and asked Paulette Pearson to drive him to his mother's house. She drove him to his mother's house, and he exited the car.

At his mother's house, the defendant realized he had paint on his hands. He asked his mother for 50 cents to buy gasoline to wash the paint off his hands. On his way to the Conoco station, the defendant encountered a man who was having trouble starting his car because the man thought he was out of gas. The defendant offered to help, and he bought gas at the Conoco station. The defendant helped the man start his car, and then walked to Polk's house. He stayed at Polk's house for ten to fifteen minutes, then he walked to his mother's house where he changed clothes and fell asleep. The defendant was awakened by someone saying his house was on fire. When he awoke, he was bleeding because, as he was told, Tim Fossis [Mrs. Pearson's son] and others had knocked him unconscious and beat him. The police arrived soon thereafter, and he changed into his work clothes. His work clothes were not clean and his rubber boots were "contaminated" with chlorine from his job at Olin Chemical. He made a short statement to the police, and they released him. The defendant denied any drug use, but admitted he had been drinking alcohol since he was seven years old. The defendant testified that he received medical treatment for the beating he received the night of the fire.

*State v. Pearson*, 1999 WL 692877, at *3 (Tenn. Crim. App. 2000).

## IV. ANALYSIS

Respondent claims three of the five claims presented by Petitioner have been procedurally defaulted because they were not raised in previous state court proceedings.[6] Because Petitioner identified his claims in his habeas petition in a rambling and nearly indecipherable manner, the Court will address the claims in the order in which Petitioner addressed them in his brief in support of his habeas petition. The Court has divided the claims into two groups: (A) claims adjudicated in state court on the merits and (B) procedurally defaulted claims.

### A. Claims Adjudicated in State Court

---

[6] Although the Respondent analyzes this claim on its merits, Respondent also asserts that portions of the ineffective assistance of counsel claim have been procedurally defaulted because Petitioner failed to seek available discretionary state appeal review of those portions of the claim.

Two of the five claims petitioner raises in this habeas petition were adjudicated in state court, and the Court will address them in turn.[7]

### 1.    Exculpatory Evidence

Petitioner claims the state prosecutor withheld exculpatory evidence. Specifically, Petitioner contends the prosecutor withheld the pre-trial taped statements of Mr. Polk and other witnesses until after the cross-examination of Mr. Polk. Petitioner argues the withholding of exculpatory evidence resulted in prejudice to him as he was prevented from knowing all the evidence against him and thus denied the opportunity to prepare a proper defense and to make an informed decision as to how to proceed with his case.[8]

Although it appears petitioner has attempted to intertwine several claims regarding the exculpatory evidence into this one claim, the Court will not address those portions of the claim as to which petitioner failed to seek available discretionary state appellate review and which are in fact, procedurally defaulted. Rather, the Court will only address the portion of the claim which Petitioner raised on appeal in state court.

The portion of this claim which was raised in the state appellate court on direct review and which is properly before this Court is taken from petitioner's appellate brief on direct review.

> Did the honorable trial court err reversibly by overruling the motion for new trial when the State improperly withheld the existence [sic] of taped statements of witnesses thereby denying the defendant his right to confrontation and due process.

---

[7]    Although Petitioner raised his first two claims as a single issue on direct review the state appellate court divided the issue into two claims, as did Petitioner in this habeas petition. Accordingly, this Court will address separately the exculpatory evidence claim and the improper rehabilitation of a witness claim.

[8]    The only evidence before the Court relative to the taped statements is the testimony about the taped statement of Mr. Polk. Neither party has directed the Court's attention to the contents of the other taped statements. Therefore, the Court's analysis will be focused on Mr. Polk's taped statement.

[Addendum No. 2, Section 1, at 3].[9]

In Petitioner's case, after his trial counsel concluded her cross-examination of Mr. Polk, the prosecuting attorney requested a bench conference at which time he requested that Mr. Polk be declared a hostile witness because his testimony was different than the previously taped statement he had given law enforcement. Defense counsel claimed she was unaware of any taped statements and that she had requested all pretrial statements of witnesses. The prosecuting attorney claimed defense counsel had not previously requested these statements. The trial court recessed and gave defense counsel an opportunity to listen to Mr. Polk's taped statement and review all pretrial statements made by other state witnesses. After listening to Mr. Polk's statement, the court gave defense counsel the opportunity to further cross examine Mr. Polk, but she declined to do so.

The state appellate court explained it found no improper withholding of the pretrial statements:

> The defendant is claiming the state's attorney should have disclosed the existence of these pretrial statements to the defense. However, there is no claim that any of these statements were favorable to the defense such that the state's attorney would be required as a constitutional matter to disclose their existence with or without a request from the defendant. *See Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) ("*Bagley* held that regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'")(quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Furthermore, Tennessee Rule of Criminal Procedure 16(a)(2) provides that the defendant in a criminal case is not entitled to pretrial discovery of "statements made by state witnesses or prospective state witnesses." Accordingly, the state's attorney was neither required to disclose the existence of the witnesses' pretrial statements nor to disclose the

---

[9] Each page of addendum 2 is paginated progressively in two ways: in the bottom center of each page and in bold in the lower right-hand corner of each page. References to the pages in addenda 2 will be made using those page numbers located in the bottom center of each page unless otherwise specified.

contents thereof. Rule 26.2(a) provides that "[a]fter a witness other than the defendant has testified on direct examination, the trial court, *on motion of a party who did not call the witness,* shall order the attorney [for the side sponsoring the *witness*] to produce...any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified." <u>Tenn. R. Crim. P. 26.2(a)</u> (emphasis added). Based upon our review of the record, there was no motion by the defendant for Polk's statements until the state raised the issue after cross-examination. Under Rule 26.2(a), the state's attorney was not required [t]o provide a copy of the statement to the defendant until a motion was made by the defendant *after* the witnesses testified on direct examination. *See State v. Taylor*, 771 S.W.2d 387, 394 (Tenn. 1989). Once the existence of the pretrial statements came to light, the defendant was provided a copy and an opportunity, via a recess, to review the statements. *See* <u>Tenn. R.Crim. P. 26.2(d)</u>.

*State v. Pearson*, 1999 WL 692877, at *4 (Tenn. Crim. App. 1999). The state court concluded Petitioner failed to present proof that the statements were favorable to his defense.

Petitioner is not entitled to any habeas relief on this claim for two reasons. First, Petitioner is asserting a state procedural rule violation. Second, there is no evidence that these taped statements were exculpatory, favorable, material, or contained any proof that constitutionally mandated the State to provide them to Petitioner. The Court will address these two reasons for denying habeas relief separately.

### a. State Law Claim

In his habeas petition, Petitioner maintains Tenn. R. Crim. P. 16(a)(2) is "against logic and reasoning" and prevented him from knowing all of the evidence against him which denied him the opportunity to prepare a proper defense. Petitioner asserts all the evidence in the statements should have been provided to him so he could have made an informed decision as to whether to go to trial or accept a plea offer.

12

The evidence before the Court reveals that Mr. Polk's taped statement is a statement made by a state witness which lacks any exculpatory, favorable, or material evidence. Two state rules of criminal procedure are applicable in this situation - Tenn. R. Crim. P. 16(b)(2), which provides these statements are not subject to pretrial disclosure and Tenn. R. Crim. P. 26.2(a), which provides that, "[a]fter a witness other than the defendant has testified on direct examination, the trial court, on motion of a party who did not call the witness, shall order the attorney" who called such witness, to produce any statement of the witness that is in their possession. Consequently, Petitioner's claim appears to be one asserting a state procedural rule violation and not one of constitutional dimension. Federal habeas courts may not correct errors of pure state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). A state law claim may be subject to federal habeas relief only if it rises to the level of a denial of a constitutional right. *See Barclay v. Florida*, 463 U.S. 939, 958-959 (1983).

In order for this claim to rise to the level of a denial of a constitutional right, Petitioner would need to demonstrate more than a mere delay in providing the pretrial taped statement. Petitioner asserts the prosecution was required to provide statements of their witnesses to the defense upon completion of direct examination of the witness citing *Jencks v. United States*, 353 U.S. 657 (1957). The delayed receipt of pretrial statements in the instant case, however, is not similar to the case of *Jencks v. United States,*[10] where the federal defendant was denied access to relevant statements or reports of government witnesses touching upon the subject matter of their testimony at the trial.

---

[10] 353 U.S. 657 (1957) (In federal prosecutions the Jencks Act places a duty on the government to deliver to the defendant certain recorded witness statements in its possession that relate to the subject matter to which the witness had testified on direct examination. 18 U.S.C. § 3500.

Rather, this is a case where Petitioner, a state defendant, received the pretrial statement of Mr. Polk subsequent to defense counsel cross-examining him but with an allowance for further cross-examination of Mr. Polk after defense counsel listened to the tape. Thus, Petitioner's reliance upon *Jencks v. United States* is misplaced as it applies only to federal prosecutions. Moreover, mistakes in application of *Jencks* or the so-called Jencks Act, 18 U.S.C. § 3500, are subject to harmless-error analysis - that is, such mistakes need not be found to be harmless beyond a reasonable doubt in order to uphold a conviction, as disclosure is not constitutionally required, but rather is mandated by statute. *United States v. Susskind*, 4 F. 3d 1400, 1406 (6th Cir.), *cert. denied*, 510 U.S. 1129 (1994); *United States v. Taylor*, 13 F.3d 986, 990-91 (6th Cir. 1994).

What *is* applicable to Petitioner's case is a state criminal procedure rule. Tennessee has adopted a state counterpart to the federal Jencks Act in Rule 26.2(a) of the Tennessee Rules of Criminal Procedure, which requires Petitioner's counsel to make a motion requesting any statements of the witness after his direct examination. Thus, as previously explained, any alleged violation of this rule would be a matter of state law and not cognizable in a federal habeas proceeding. Moreover, even if this issue was cognizable in this habeas proceeding, Petitioner would not be entitled to any relief because Petitioner's counsel did not make a motion at the conclusion of Mr. Polk's testimony, and as soon as she requested the pretrial statements the trial court recessed for her to review the statements. Accordingly, Respondent's motion to dismiss Petitioner's *Jencks*/Rule 26.2(a) claim is **GRANTED**.

### b. Constitutional Law Claim

The second reason Petitioner is not entitled to habeas relief on this claim is that he has failed to demonstrate a constitutional violation. Petitioner's argument that his due process rights were violated because the evidence was favorable or material to his guilt or punishment is also unavailing. First, the evidence was not suppressed because he was eventually provided with the statement and an opportunity to cross examine the witness about the statement. Second, the record contains no evidence demonstrating the statement was favorable or material to his guilt or punishment.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Even when the accused fails to request such evidence, the duty to disclose impeachment evidence, as well as exculpatory evidence, is applicable. *United States v. Bagley*, 473 U.S. 667, 676 (1985); *United States v. Agurs*, 427 U.S. 97, 107 (1976).

The Supreme Court of the United States has identified the three components of a *Brady* violation as: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; the evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *see also Banks v. Dretke*, 540 U.S. 668, 691 (2004). To establish prejudice, Petitioner must demonstrate that "'there is a reasonable probability' that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Strickler*, 527 U.S. at 289.

Although the disclosure of the audio tapes occurred after defense counsel had cross-examined Mr. Polk, the defense case had not yet commenced and the trial court recessed to permit defense counsel to review the alleged belatedly discovered materials, make use of the benefits of any evidence contained on the tapes, and cross-examine Mr. Polk about the statement. Defense counsel did not complain that the recess was insufficient to permit her to adequately prepare to proceed with the cross examination of Mr. Polk. Moreover, defense counsel ultimately elected not to cross-examine Mr. Polk, apparently deciding the tape contained nothing of significance.[11]

Thus, any failure by defense counsel to address Mr. Polk's pretrial taped statement was not caused by the state. Although the statements were not provided to Petitioner until after defense counsel completed her cross-examination of Mr. Polk, the Court did offer counsel the opportunity to further cross-examine Mr. Polk after she listened to his statement. The Court also notes that defense counsel engaged in a rigorous re-cross examination of Mr. Polk. Thus, there was no substantial prejudice to Petitioner.

Petitioner has failed to substantiate his claim that he was prejudiced by not knowing all of the State's evidence. The taped statement of Mr. Polk consisted of testimony about Petitioner's conversation and actions while visiting with Mr. Polk. Petitioner was well aware of his conversations and actions during such visit. Thus, Petitioner was in the best position to apprise defense counsel of what testimony to expect from Mr. Polk when preparing a defense. Moreover, Petitioner's knowledge of his conversations and actions while with Mr. Polk provided him with the necessary information to make an informed decision whether

---

[11]     The State chose to question Mr. Polk on redirect and then defense counsel re-crossed him about the source of his additional testimony. Mr. Polk explained that he listened to his taped statement during the recess which refreshed his memory.

to proceed to trial or negotiate a plea.[12]  In addition, counsel could have interviewed Mr. Polk prior to trial to determine what statements he had previously given, the content of the conversations Mr. Polk had with Petitioner, and Mr. Polk's observations of the Petitioner.[13] Mr. Polk's name and address were listed on the indictment, thus notifying defense counsel that the prosecutor intended to call Mr. Polk as a witness.

Moreover, a review of the record in this case does not reflect these tapes were favorable or material to Petitioner's case.  Petitioner has not demonstrated, nor does the record reflect any evidence demonstrating, that the taped statement of Mr. Polk contained favorable evidence material to Petitioner's guilt or punishment.  Even assuming the statement was favorable or material, Petitioner has failed to meet the third component of a *Brady* violation - that is, Petitioner has not demonstrated any prejudice resulted from the alleged delay in providing this evidence.  There is no proof before this Court demonstrating that there is a reasonable probability that the result of the trial would have been different had the taped statement been disclosed to defense counsel earlier.  Moreover, the delay in providing the pretrial statements did not prevent Petitioner from receiving a fair trial. Accordingly, the verdict against him is worthy of confidence.

In summary, Petitioner has failed to demonstrate either a *Jencks* or *Brady* violation, or any other constitutional violation.  As there is no evidence in the record suggesting the disclosure of the tape recordings at an earlier time could reasonably have put the case

---

[12]     *Brady* did not alter the rule that defendants have no general constitutional right to discovery in criminal cases.  *Spirko v. Mitchell*, 368 F.3d 603, 610 (6th Cir. 2004), *cert. denied*, 544 U.S. 948 (2005).  Moreover, no *Brady* violation occurs when a defendant knew or should have known of the essential facts permitting him to take advantage of the information, or where the evidence was available to the defendant from another source.  *Id.* at 611; *United States v. Delgado*, 350 F.3d 520, 527 (6th Cir. 2003); *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000); *cert denied*, 531 U.S. 1082 (2001).

[13]     The record does not indicate whether trial counsel attempted to interview Mr. Polk prior to trial.

against petitioner in such a different light as to change the outcome, there is no evidence that the late disclosure of these tapes undermines confidence in the jury's verdict. *See Kyles v. Whitley*, 514 U.S. 419, 435 (1995). Petitioner cannot demonstrate and has not demonstrated how he was prejudiced by the trial court's resolution of the prosecutor's failure to give defense counsel Mr. Polk's pretrial statement upon completion of his direct examination. Thus, Petitioner has not demonstrated that the alleged late disclosure of the tapes resulted in any constitutional violation.

This Court may not grant habeas relief on a claim that was adjudicated on the merits in state court unless the state court's decision was contrary to, or involved an unreasonable application of clearly established Federal law. Here, the Tennessee Court of Criminal Appeals resolved the issue on federal and state grounds. First, the appellate court determined there was "no claim that any of these statements were favorable to the defense such that the state's attorney would be required as a constitutional matter to disclose their existence with or without a request from the defendant." This conclusion was not based upon an unreasonable determination of the facts nor was it contrary to nor an unreasonable application of Supreme Court precedent. Indeed, the Tennessee Court of Criminal Appeals' decision comports with the Supreme Court's holdings in *Brady*, *Kyles*, and *Bagley*.

Second, the appellate court resolved the claim on state law grounds. Relying on two state court procedural rules, the appellate court denied Petitioner's direct appeal finding that: (1) under Tenn. R. Crim. P. 16(a)(2) "the state's attorney was neither required to disclose the existence of the witnesses' pretrial statements nor to disclose the contents thereof"and (2) "Under [Tenn. R. Crim. P.] 26.2(a), the state's attorney was not required

[t]o provide a copy of the statement to the defendant until a motion was made by the defendant *after* the witnesses testified on direct examination." *State v. Pearson*, 1999 WL 692877, at * 4 (citing *State v. Taylor*, 771 S.W.2d 387, 394 (Tenn. 1989), *cert. denied,* 497 U.S. 1031 (1990).[14]  This conclusion likewise was neither contrary to federal law nor an unreasonable application of Supreme Court precedent.

Accordingly, Petitioner's claim that the State improperly withheld pretrial statements of witnesses lacks merit and Respondent's motion to dismiss such claim will be **GRANTED**.  The Court will now turn to the related issue concerning the improper rehabilitation of Mr. Polk.

### 2.    Improper Rehabilitation of Witness

Petitioner challenges the State's rehabilitation of one of its witnesses, Mr. Polk.  At the conclusion of Mr. Polk's cross examination the prosecuting attorney requested that Mr. Polk be declared a hostile witness because his testimony was not entirely consistent with his pretrial taped statement.  The Court granted a recess for defense counsel to review the statement.  During that recess, the prosecuting attorney had Mr. Polk review his pretrial recorded statement.  After the recess, Mr. Polk returned to the witness stand and after defense counsel declined any further cross-examination, the prosecuting attorney questioned him further on re-direct, eliciting additional details from Mr. Polk about his conversation with Petitioner and his observations of Petitioner just prior to the fire.  Mr. Polk

---

[14]    Although the discovery order directed the State to identify all the witnesses it intended to call, it did not direct the State to provide a copy of the statements to defense counsel after a witness testified [Addendum No. 1, Vol. 1, at 9-10].  The Court was unable to locate a defense motion requesting the State to provide defense counsel with witness statements after they testified.

explained that his memory about the details of the night in question was refreshed after he listened to his pretrial statement during the recess.

In state court, on direct appeal, Petitioner raised the following claim:

Did the Honorable Trial Court err [when it permitted the state to]...improperly rehabilitate[] its witness out of Court thereby denying the defendant his right to confrontation and due process?

[Addendum No. 2, Section 1, at 4].

Petitioner supported this claim in state court citing the United States and Tennessee Constitution as authority that all criminal defendants have the right to confront the witnesses against them. Petitioner claimed the prosecuting attorney rehabilitated the witness outside the presence of Petitioner and the jury, denying Petitioner his right under Article I § 9 of the Tennessee Constitution to "meet the witness face to face" and denying the jury the ability to properly assess the witnesses' credibility or the state and quality of his memory. Petitioner argued that Mr. Polk's "near 180 degree turn in testimony was extremely damaging to the defendant in this circumstantial case; the defendant was denied the opportunity to meaningfully check the witnesses vearcity [sic] or recollection as a result of the State's actions." [Addendum No. 2, Section 1, at 5].

Petitioner also argued the failure to introduce the evidence that refreshed Mr. Polk's memory placed Petitioner and the jury in a position of not knowing what, if anything, refreshed Mr. Polk's memory and of not knowing whether Mr. Polk was promised anything or threatened to change his testimony.[15] Finally, Petitioner argued that even if there were

---

[15]     Mr. Polk testified that, during the recess, he reviewed the statement he gave the police officer a few days after the fire and his review of his statement refreshed his memory [Addendum No. 1, Vol. II, at 51]. On re-cross Mr. Polk testified he listened to the tape of his previous statement during the recess [Addendum No. 1, Vol. II, at 58]. By listening to the tape, he was able to recall that his meeting with Petitioner began with Petitioner being distraught about his pending divorce but after Mr. Polk shared his divorce experience with Petitioner, his (Petitioner's) mood improved [Addendum No. 1, Vol. II, at 64]. Mr. Polk testified that he was not told to testify differently or to change his testimony

no promises or threats made, the appearance of such a possibility requires that his conviction be vacated.

The state appellate court analyzed this claim first as a claim of trial error and then as a claim of prosecutorial misconduct. This habeas Court will likewise address this claim both as a trial court error and as a prosecutorial misconduct claim.

### a. Trial Court Error

Petitioner contends the prosecutor rehabilitated Mr. Polk out of court during the recess, which violated his right to confront the witness. Petitioner also claims the rehabilitation of Mr. Polk violated state rules and procedures.

Petitioner makes a circular argument based on a Tennessee evidentiary rule and a Tennessee Rule of Criminal Procedure. Petitioner argues that before a writing can be used to refresh the memory of a witness, the witness must claim a lack of memory of the events in question and Mr. Polk did not claim a lack of memory of events. Petitioner then acknowledges that his claim does not involve a writing, but rather involves a taped statement, and Rule 612 of the Tennessee Rules of Evidence, which permits the use of a prior writing to refresh a witnesses' memory after a witness claims a lack of memory, does not extend to taped statements. Petitioner then argues the prosecuting attorney failed to lay a proper foundation to permit Mr. Polk to listen to his pretrial taped statement to refresh his memory. Petitioner's final argument on this claim is that Mr. Polk changed his testimony to coincide with his prior statement.

---

in any way [Addendum No. 1, Vol. II, at 62].

The state appellate court began its analysis of alleged trial court error by discussing Rule 612 of the Tennessee Rules of Evidence, which refers to writings being used to refresh the memory of a witness who claims a lack of memory of the events in question. The appellate court declined to determine whether Tenn. R. Evid. 612 applied to taped statements because it concluded:

> Regardless of Rule 612's application to a taped statement, a proper foundation was not laid for Polk's listening to his pretrial taped statement in order to refresh his memory. The witness claiming a lack of memory is the foundation required for a writing to be used to refresh the witness' memory. Polk neither claimed a lack of memory prior to listening to his pretrial statement nor was his memory refreshed on the witness stand. *But see State v. Mathis*, 969 S.W.2d 418, 421 (Tenn. Crim. App. 1997) (foundation required under Rule 612 was shown where witness testified that his memory was refreshed *after* he was shown and read a prior statement on the witness stand).
>
> The prosecutor's process of examining Polk can be viewed as an attempt to impeach the credibility of his own witness. *See* Tenn. R. Evid. 607; *State v. Randy Lee Jones*, No. 01C01-9708-CC-00326, slip op. at 19 (Tenn. Crim. App. Nashville, July 8, 1999) (prior inconsistent statement may be used to impeach a party's own witness). The prosecutor could have impeached Polk by asking him about his prior inconsistent statement while Polk was testifying. *See* Tenn. R. Evid. 607, 613. Under those circumstances, the prior statement would not be substantive evidence. It would be admissible only for impeachment purposes. *See State v. Reece,* 637 S.W.2d 858, 861 (Tenn. 1982).

*State v. Pearson*, 1999 WL 692877, at *5.

The state appellate court concluded the record reflected the prosecutor intended Mr. Polk's prior statement regarding Petitioner's state of mind on the night of the fire to be substantive evidence, even though the State did not seek to introduce Mr. Polk's prior taped statement into evidence. The appellate court explained its conclusion that the prosecutor intended Mr. Polk's prior statement to be substantive evidence as follows:

It is evident from the record that the prosecutor intended that Polk's prior statement regarding the defendant's state of mind on the night of the fire be substantive evidence. After listening to his prior statement, Polk changed his testimony to coincide with the prior statement. Because Polk changed his testimony, the substance of the prior statement about the defendant's state of mind on the night of the fires became evidence via the direct testimony. *See* Neil P. Cohen, Sarah Y. Sheppeard and Donald F. Paine, *Tennessee Law of Evidence* § 613.1, at 407 (3d ed 1995) ("the in-court testimony becomes the real evidence"). Thus, as long as the prosecutor was proceeding in good faith, he could have broached the subject of the pretrial statement through Rules 607 and 613, and once the witness adopted the content of the pretrial statement, the resulting testimony would be substantive evidence. Although the procedure used by the prosecutor in examining Polk is not proper under the rules of evidence, any trial court error in allowing the redirect testimony after Polk listened to his pretrial statement was harmless. Tenn. R. Crim. P. 52(a). Had the prosecutor followed proper impeachment procedures, the evidence would have been substantively admissible.

*State v. Pearson*, 1999 WL 692877, at *5-*6.

The state appellate court disposed of this claim on state law grounds. Generally, federal habeas courts cannot review claims that the state court has disposed of on state law grounds. *See Lambrix v. Singletary*, 520 U.S. 518, 523-24 (1997) (noting that where "the state law determination is sufficient to sustain the decree, any opinion ...on the federal question would be purely advisory") (citing *Herb v. Pitcairn*, 324 U.S. 117, 125-26 (1945). Put another way, federal habeas relief is not available if the state court decision rests on state law that "is independent of the federal question and adequate to support the judgement." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

Although claims alleging a violation of state law are generally not subject to review in federal habeas proceedings, *Pulley v. Harris*, 465 U.S. 37, 41 (1984), they may be subject to federal habeas review if they rise to the level of a denial of rights protected by the United States Constitution. *Barclay v. Florida*, 463 U.S. 939, 958-959 (1983). In the

case before this habeas Court, Petitioner contends the improper rehabilitation of Mr. Polk violates his constitutional rights to confront witnesses and due process. The state court most likely did not address Petitioner's constitutional claims because, although he couched this claim in terms of right to confront and due process, he did not support his claim with argument based on federal constitutional law and cases.

Nevertheless, if this habeas court finds a constitutional error, the claim is resolved using the relevant harmless error standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). "The ... test is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.* at 637. (citations omitted). Although no constitutional error has occurred in Petitioner's case, as explained below, any possible error would in any event clearly be harmless beyond any reasonable doubt based on the facts and record before the Court.

This claim amounts neither to a Confrontation Clause nor Due Process Clause violation. When evaluating a Confrontation Clause violation, courts must keep in mind that "[c]onfrontation means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315 (1974). The *Davis* Court held that the Confrontation Clause requires a defendant to have some opportunity to show bias on the part of a prosecution witness. *Id.* Petitioner's allegation does not amount to a violation of his right to confront witnesses because there is neither an allegation that the court actually prohibited questioning of Mr. Polk nor denied Petitioner the opportunity to show bias on the part of Mr. Polk. Indeed, defense counsel declined the trial court's invitation to cross-examine Mr.

Polk after counsel reviewed his pretrial statement. However, subsequent to Mr. Polk's re-direct examination, Petitioner's counsel did re-cross the witness and attempted to show bias and untruthfulness on the part of the prosecution witness. Consequently, Petitioner is not entitled to any habeas relief on his confrontation claim.

The Court now turns to Petitioner's claim that the rehabilitation of Mr. Polk denied him due process. The state court ruled that, although the rehabilitation of Mr. Polk was improper under the Tennessee rules of evidence, any trial court error in allowing the redirect testimony after Mr. Polk listened to his pretrial statement was harmless error. Alleged errors of state evidentiary and procedural law, such as the one presented here, rarely rise to a constitutional level. Although the manner in which the prosecuting attorney rehabilitated his witness is procedurally incorrect, such error does not amount to an error of constitutional dimension. This error did not deprive Petitioner of a fundamentally fair trial; thus, it is not cognizable in this habeas proceeding. *See Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) ("The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations."). The record does not reflect that this error was so egregious as to deny Petitioner a fair trial and his right to due process. The jury was informed that, during the recess, Mr. Polk reviewed his statement that he had given to law enforcement a few days after the fire. Mr. Polk testified the review helped to refresh his memory. Neither the prosecutor nor defense trial counsel attempted to introduce the tape into evidence.

The record reflects Mr. Polk added to his testimony after reviewing his pretrial statement. Mr. Polk previously testified he and Petitioner engaged in casual conversation and had a drink together the evening before the fire. Mr. Polk testified he was unable to

determine Petitioner's mood but described him as laughing and joking [Addendum No. 1, Vol. II, at 32-33]. This encounter occurred at approximately 9:30 p.m. and Petitioner left Mr. Polk's house about 10:30 p.m. Mr. Polk testified Petitioner returned to his residence approximately two hours later smelling of gasoline [Addendum No. 1, Vol. II, at 34-36].

On redirect Mr. Polk testified that listening to his pretrial taped statement refreshed his memory about his initial encounter with Petitioner. Mr. Polk testified Petitioner, who was going through a divorce at the time, was crying and appeared depressed about his family situation. Based on Mr. Polk's divorce experience, he gave Petitioner some advice on how to handle his divorce situation. On re-cross, Mr. Polk explained that after he shared his divorce experience with Petitioner then Petitioner's demeanor changed and he began laughing and joking. Mr. Polk believed Petitioner benefitted from their conversation [Addendum No. 1, Vol. II, at 52-54, 60]. Mr. Polk denied the prosecuting attorney instructed him to testify "differently." Rather, Mr. Polk testified the prosecuting attorney asked him to listen to the tape and after he listened to the tape he remembered details that he had previously forgotten. Mr. Polk also recalled some insignificant details about Petitioner's second visit to his home in addition to the significant fact that after Petitioner left his house the second time smelling of gasoline, he called Tommy Ramsey in an attempt to verify Petitioner's explanation that Tommy Ramsey's son ran out of gas and Petitioner obtained gas for his car [Addendum No. 1, Vol. 2, at 42, 74].[16]

Petitioner claims the procedure by which Mr. Polk was rehabilitated denied him (Petitioner) due process. Although the procedure was incorrect, this claim does not

---

[16]     This testimony did not reflect whether or not he was able to verify Petitioner's explanation.

support a due process violation because the Tennessee appellate court determined this evidence would have been allowed had the prosecuting attorney followed proper procedure. Moreover, "[t]he introduction [of this alleged] improper evidence against [Petitioner] does not amount to a violation of due process [because it is not] 'so extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.), *cert. denied*, 525 U.S. 840 (1998).

Even if there were some arguable due process violation, the evidence against Petitioner, although circumstantial, is sufficient to render the violation harmless. Although the rehabilitation of Mr. Polk was procedurally incorrect, Petitioner has not demonstrated that such rehabilitation amounted to constitutional error or prejudice rendering his trial fundamentally unfair. There is no showing that the rehabilitation of Mr. Polk "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. at 637. Defense counsel throughly questioned Mr. Polk about the additional facts he recalled from reviewing his pretrial statement. Consequently, the procedurally incorrect method of rehabilitating the State's witness did not deny Petitioner a fundamentally fair trial and does not amount to a constitutional trial court error.

The state court decision was not based upon an unreasonable determination of the facts; was not contrary to federal law; and was not the result of an unreasonable application of Supreme Court precedent. Accordingly, Respondent's motion to dismiss Petitioner's claim that the procedure used to rehabilitate the witness was trial court error will be **GRANTED**.

### b. Prosecutorial Misconduct Claim

The Court will now analyze this claim as one alleging prosecutorial misconduct. Petitioner contends the prosecutor engaged in prosecutorial misconduct when he did not follow the proper procedure to rehabilitate Mr. Polk. The state appellate court concluded the prosecutor's conduct did not rise to the level of prosecutorial misconduct. The state appellate court concluded the prosecutor's conduct did not affect the verdict to the prejudice of the defendant and the prosecutor did not act in a manner calculated to unfairly prejudice the defendant, but rather acted out of confusion in "the heat of battle." Moreover, the appellate court concluded that had the prosecutor used the proper method, Mr. Polk's testimony would have been admissible.

Prosecutorial misconduct must be so egregious as to deny petitioner a fundamentally fair trial before habeas corpus relief becomes available. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). In this regard, "'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993), *cert. denied*, 510 U.S. 1201 (1994) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). Petitioner must meet this high standard before habeas relief is available to him.

Petitioner must show the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 647. In order to meet this standard, Petitioner may not rely on a 'reasonable possibility' that trial error contributed to the verdict. *Brecht v. Abrahamson*, 507 U.S. at 637. Rather, Petitioner must show that the prosecutor's actions caused him "actual prejudice." *Id.*

Considering the totality of the circumstances, the record does not reflect that the prosecutor's action in rehabilitating the State witness was so egregious as to justify habeas

relief. The state court determined that the evidence would have been admissible had the prosecutor used the proper method. The record does not reflect that the prosecutor intentionally rehabilitated Mr. Polk improperly. Rather, the record reflects this was the prosecuting attorney's first trial. The prosecuting attorney did not hide the fact that he had Mr. Polk review his pretrial statement during the recess. Indeed, the prosecuting attorney openly brought forth, through his re-direct examination of Mr. Polk, that he had Mr. Polk listen to his previously taped statement during the recess. Although the prosecutor used an incorrect procedure when rehabilitating Mr. Polk, this Court cannot conclude that the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process," *Donnelly*, 416 U.S. at 647, or that the appellate court unreasonably applied or acted contrary to federal law in so concluding. This simply does not qualify as an egregious case of prosecutorial misconduct. In addition, the testimony of the other witnesses and the original testimony of Mr. Polk was sufficiently compelling to justify the jury's verdict notwithstanding the prosecutor's improper rehabilitation of Mr. Polk.

Accordingly, the state court's conclusion that the prosecutor's conduct did not rise to the level of prosecutorial misconduct was not contrary to or an unreasonable application of Supreme Court precedent. Petitioner is not entitled to habeas relief on the basis of his prosecutorial misconduct claim and Respondent's motion to dismiss this claim will be **GRANTED**.

### B.  Procedurally Defaulted Claims

A state prisoner must exhaust available state remedies before requesting relief under 28 U.S.C. § 2254(b). *See Granberry v. Greer*, 481 U.S. 129, 133-34 (1987); *Rose v. Lundy*, 455 U.S. 509, 519 (1982); Rule 4 of Rules Governing Section 2254 Cases in the

United States District Courts. A petitioner has failed to exhaust his available state remedies if he has the opportunity to raise his claim by any available state procedure. *Preiser v. Rodriguez*, 411 U.S. 475, 477, 489-90 (1973). When a petitioner's claims have never been actually presented to the state courts but a state procedural rule prohibits the state court from extending further consideration to them, the claims are deemed exhausted, but procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991).

Before a petitioner can present a claim in a petition for writ of *habeas corpus*, he must first have presented that claim in "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Under Tennessee's appellate review process, a defendant has a right to have his claims on appeal initially heard by the Tennessee Court of Criminal Appeals. After a defendant's claims have been decided in the Tennessee Court of Criminal Appeals, a defendant may file a petition requesting permission to appeal to the Tennessee Supreme Court. (Death penalty appeals automatically proceed directly to the Tennessee Supreme Court for review). Failure by a defendant to present a claim in his appeal to the appellate court will result in a procedural default of that claim if it is later raised in a petitioner's petition for writ of *habeas corpus*. *See Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002), *cert. denied*, 540 U.S. 839 (2003).

The procedural default rule announced in *Boerckel* that addressed a petitioner's failure to pursue a claim on direct appeal applies with equal force in cases where a petitioner fails to pursue a claim on appeal in a post-conviction petition on collateral review. *See White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999), *cert. denied*, 528 U.S. 1127 (2000). However, as explained below, a federal court can review procedurally defaulted

claims if a petitioner shows cause for failure to raise the claim and actual prejudice which resulted from such failure, or that refusal to review the claim would result in a fundamental miscarriage of justice.

When a petitioner presents claims to the state courts as a matter of federal law, the state court must address the merits of those claims. *Coleman v. Thompson*, 501 U.S. at 734-35. If the state court decides those claims on an adequate and independent state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, the Petitioner is barred by this procedural default from seeking federal habeas review unless he can show cause and prejudice for default. *See Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977).

A petitioner confronted with procedural default must show cause and prejudice for the default in order to obtain federal review of his claim. *Edwards v. Carpenter*, 529 U.S. 446 (2000); *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Wainwright v. Sykes*, 433 U.S. at 87-88. Cause for a procedural default depends on some "objective factor external to the defense" interfered with the petitioner's efforts to comply with the procedural rule. *Coleman*, 501 U.S. at 752-53; *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner may avoid the procedural bar, and the necessity of showing cause and prejudice, by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The Petitioner must show "a constitutional violation has probably resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (*quoting Murray*, 477 U.S. at 496). "To establish the requisite probability, the petitioner must show it is more likely than not no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327.

The Court will now analyze each of Petitioner's procedurally defaulted claims, and will address them in the order in which Petitioner raised them in his brief in support of his habeas petition.

### 1. Ineffective Assistance of Trial and Appellate Counsel

Petitioner raises a litany of claims, without providing factual support, against both trial and appellate counsel. Petitioner claims any procedural default of these ineffective of assistance of counsel claims are excused because appellate counsel was ineffective for failing to raise these claims on direct appeal. For example, Petitioner claims trial counsel failed to adequately communicate with him prior to trial. However, he fails to provide any factual support or an explanation to support this conclusion. Additionally, Petitioner claims trial counsel failed to interview defense witnesses but he fails to identify such defense witnesses and their purported testimony. Petitioner has failed to provide any support for the majority of his claims. Consequently, Petitioner has failed to adequately plead his claim, in violation of Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts.

Assuming for the sake of discussion, however, that the claim is deemed adequately pled, it would still be dismissed because Petitioner failed to raise these claims in the Tennessee appellate court. Contrary to Petitioner's contention, appellate counsel's failure to raise these claims on direct appeal does not excuse his procedural default because Petitioner had the opportunity to raise these claims during his state post-conviction proceedings but failed to do so. Although Petitioner raised three claims of ineffective assistance of counsel in the state appellate courts when he appealed the denial of his state

post-conviction petition, he did not raise the same claims that he presents in the pending habeas corpus petition.

The ineffective assistance of counsel claims presented by Petitioner in this habeas petition were not raised against trial and appellate counsel in state court. Thus, these claims are procedurally barred. Petitioner offers no explanation for not raising these ineffective assistance claims against trial and appellate counsel in his state post-conviction proceedings. Since these claims have never been raised in the state appellate courts this habeas Court is procedurally barred from reviewing them absent proof of cause and prejudice or that a miscarriage of justice will result from enforcing the procedural default.

The three ineffective assistance of counsel claims Petitioner raised in the state appellate court have not been raised in his habeas petition. Petitioner appealed the denial of his post-conviction petition claiming trial counsel was ineffective for failing to communicate offers of settlement to him; failing to call Rebecca Pearison as a witness to testify she had observed drug sales being made in the house which is the subject of Petitioner's arson conviction; and failing to call Larry Crutcher, Petitioner's brother and alibi witness. Accordingly, those are the only claims of ineffective assistance of counsel that have been exhausted at the state court level and that are ripe for federal habeas review.

Assuming for the sake of discussion that Petitioner is attempting to raise the same three ineffective assistance of counsel claims he raised during his state post-conviction appeal, his habeas petition would still be dismissed because Petitioner has failed to demonstrate the state court's decision was contrary to or an unreasonable application of clearly established federal law, *i.e.*, *Strickland v. Washington,* 466 U.S. 668 (1984), as determined by the United States Supreme Court. For the Petitioner to succeed, however,

he must do more than show that he satisfied *Strickland's* test, because under 28 U.S.C. § 2254(d)(1) it is not enough to convince a federal habeas court that, in its independent judgement, the state court decision applied *Strickland* incorrectly. Rather, he must show the Tennessee Court of Criminal Appeals applied *Strickland* to the facts of his case in an objectively unreasonable manner.

The Supreme Court established the two-prong test for ineffective assistance of counsel in *Strickland*. The two prongs of *Strickland* are: 1) counsel's performance was deficient and 2) this deficient performance prejudiced petitioner. Following is the Court's analysis of Petitioner's claims that counsel was ineffective for failing communicate settlement offers and for failing to present two witnesses.

The Tennessee Court of Criminal Appeals concluded that the record supported the trial court's conclusion that the misdemeanor plea offer had been communicated to the petitioner and he had rejected the offer.[17] The state court credited the testimony of trial counsel's investigator that, subsequent to counsel telling him Petitioner refused the misdemeanor plea offer, he had spoken with Petitioner about the state's proposal and had encouraged him to accept the plea offer. The state court credited the testimony of defense counsel and her investigator that "petitioner adamantly insisted upon a trial, explaining that he "wanted to be vindicated" and he felt he had been "done wrong" by the victim and her children." *Pearison v. State*, 2004 WL 1514844, at *6 (Tenn. Crim. App. 2004). The appellate court determined the evidence did not preponderate against the trial post-

---

[17]     Trial counsel had no recollection of the misdemeanor offer by the state but trial counsel's investigator and the prosecuting attorneys testified as to the offer and rejection.

conviction court finding that the State had made a lenient offer of compromise and that Petitioner, after being made aware of its terms, chose to exercise his right to trial.

The record before this Court supports the state court's conclusions. Credibility findings made by state courts are entitled to the presumption of correctness and Petitioner has not submitted any evidence to rebut the correctness of the credibility findings. Consequently, Petitioner has failed to demonstrate counsel was ineffective. Accordingly, the rejection of this claim by the Tennessee courts was neither the product of an unreasonable application of clearly established federal law nor the result of an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This aspect of petitioner's ineffective assistance claim does not warrant federal habeas relief.

The second aspect of Petitioner's ineffective assistance of counsel claim consists of his claim that trial counsel was ineffective for failing to call two of Petitioner's siblings as witnesses. The post-conviction state court concluded that neither the testimony of Petitioner's sister nor the alibi testimony of Petitioner's brother would have changed the outcome of the trial. Although Petitioner's sister testified she had observed the victim's sons cooking crack in the residence where the fire occurred, she offered no testimony to support Petitioner's theory that the house had been burned by rival gang members. Similarly, Petitioner's brother's testimony establishing an alibi for Petitioner was diametrically opposed to the Petitioner's own testimony during trial.

The state court's determination that it is unlikely that the testimony of either of these witnesses would have changed the outcome of the trial was neither contrary to nor an unreasonable application of clearly established federal law or an unreasonable

determination of the facts. Petitioner cannot obtain habeas corpus relief on his ineffective assistance of counsel claim because he has not shown the state court decision was an unreasonable application of *Strickland* or contrary to any federal law.

Accordingly, Respondent's motion to dismiss Petitioner's claim that counsel was ineffective will be **GRANTED** for three reasons. First, Petitioner failed to provide factual support for his claims in violation of Rule 2 of Rules Governing Section 2254 Cases in the United States District Courts. Petitioner's failure to adequately plead his claim in violation of Rule 2(c) results in a dismissal of this claim. In the alternative, Petitioner has not raised the exhausted claims of ineffective assistance of counsel in his habeas petition but rather has raised procedurally barred ineffective assistance of counsel claims which requires dismissal of the claim. Finally, the Court's thorough review of the record reveals the state court's resolution of Petitioner's ineffective assistance of counsel claim did not involve an unreasonable interpretation of the facts and was neither contrary to nor based on an unreasonable application of Supreme Court law.

### 2. Judicial Bias

Petitioner raises several allegations of judicial bias including, but not limited to, claims that the trial judge denied him bail and house arrest; exhibited hostility toward Petitioner and his family when he interrupted their testimony and commented on their testimony; and refused a jury request for further instructions.

Petitioner is obliged to present each of his factual and legal claims to the state courts and his failure to do so bars federal review absent a showing of cause and prejudice, or a miscarriage of justice which requires Petitioner to demonstrate that "constitutional violation has probably resulted in the conviction of one who is actually

innocent of the crime." *Schlup*, 513 U.S. at 324. These claims of judicial bias are procedurally barred as they have not been raised in state court. Petitioner did not raise these judicial bias claims in the Tennessee Court of Criminal Appeals in either his direct appeal from his conviction or his appeal from the denial of his petitioner for post-conviction relief [Addendum No. 2, Doc. 3, Addendum No. 4, Doc. 3].

Petitioner has failed to demonstrate cause for his procedural default or any prejudice that resulted from the default. Additionally there is no allegation or proof that a miscarriage of justice will result from enforcing the procedural default. Therefore, the merits of Petitioner's claim concerning judicial bias will not be addressed. Accordingly, Respondent's motion to dismiss Petitioner's Judicial Bias claim will be **GRANTED**.

### 3. Blakely Error

Petitioner asserts that *Blakely v. Washington,* 542 U.S. 296 (2004) invalidates Tenn. Code Ann. § 40-35-501(I)(2) which provides that, for several different offenses, including aggravated arson, there is not a release eligibility for a person committing the offense after July 1, 1995, but instead the inmates who fall in those categories shall serve one hundred percent of the sentence imposed by the court less certain limited sentence credits earned and retained.

Petitioner contends the trial court lacked the authority to enhance his sentence based on the Tennessee statute because, presumably, the statute "was not included in the indictment [and] proven beyond a reasonable doubt during the trial process [Court File No. 3, at 7-8]. Petitioner is simply incorrect.

In *Blakely v. Washington*, 524 U.S. 296, 303 (2004), the Supreme Court held in a case that invalidated the Washington state determinative sentencing scheme, that "the

'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" (emphasis in original). *Blakely* called into question every sentencing scheme that permitted a sentencing judge to resolve disputed sentencing factors and impose a greater punishment based upon his additional findings.

Petitioner's claim does not fall into the category of *Blakely* claims. The Tennessee statute at issue requires defendants convicted of aggravated arson to serve one hundred percent of their sentence. The judge in petitioner's case did not resolve any disputed sentencing factor; he merely applied the statute regulating the percentage of Petitioner's sentence that he must serve based on his aggravated arson conviction. Consequently, Petitioner has failed to raise a *Blakely* claim. Additionally, the Supreme Court has not made *Blakely* retroactively applicable to cases on collateral review for purposes of a habeas petition. *See Simpson v. United States*, 376 F.3d 679, 681 (7th Cir. 2004).

Moreover, this claim was not presented in state court and thus is procedurally barred. *Blakely* was decided on June 24, 2004, after Petitioner's trial and direct appeal. Petitioner's post-conviction appeal was pending at the time *Blakely* was decided. The state appellate court rendered it's decision on July 7, 2004, and the Tennessee Supreme Court denied Petitioner permission to appeal on December 20, 2004. Petitioner could have filed a motion requesting to supplement his state post-conviction appeal with the *Blakely* claim pursuant to Rule 22[18] of the Tennessee Rules of Appellate Procedure or he could have

---

[18] This rule covers the filing of motions on appeal.

raised the *Blakely* claim in his application for permission to appeal to the Tennessee Supreme Court.

Petitioner's failure to raise his *Blakely* claim in state court has resulted in a procedural default. Thus, federal habeas review is unavailable as Petitioner has failed to establish cause to overcome the procedural default or establish there will be a fundamental miscarriage of justice if the Court does not review his *Blakely* claim. Because Petitioner has not established cause and prejudice or a fundamental miscarriage of justice, he fails to overcome the procedural bar.[19]

Accordingly, Respondent's motion to dismiss Petitioner's *Blakely* claim will be **GRANTED**.

---

[19] Blakely is not retroactively applicable to cases on collateral review. *See United States v. Booker,* 543 U.S. 220 (2005) (there is no indication that the United States Supreme Court intended *Blakely* to apply retroactively; *Schardt v. Payne*, 414 F.3d 1025, 1036 (9th Cir. 2005) (concluding that *Blakely* does not apply retroactively to cases on § 2254 habeas review). Thus, it appears that even if Petitioner had raised his *Blakely* claim in state court, he would not be entitled to habeas relief since *Blakely* is not retroactively applicable to cases on § 2254 habeas review.

**V.    CONCLUSION**

Respondent's motion to dismiss and for judgment as a matter of law (Court File No.

4) will be **GRANTED** as to all claims.  Petitioner is not entitled to an evidentiary hearing,

and his § 2254 petition (Court File No. 4) will be **DISMISSED**.

A judgment will enter.


_____*s/ Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE